RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 1/18/13

**IMPORTANT NOTICE:** Courtesy copies of documents you file should **NOT** be provided to any judge. All communications with the court SHALL **ONLY** be through documents filed with the Clerk of Court.

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

FREDDIE LEE TAYLOR                         DOCKET NO.: 1:11-cv-1922

VERSUS
                                           JUDGE DEE D. DRELL
                                           MAGISTRATE JUDGE JAMES D. KIRK
WARDEN TIM WILKINSON

## REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. §2254 by pro se petitioner Freddie Lee Taylor (Taylor). Taylor filed the instant petition on October 28, 2011 (Doc. 1) contesting his 2004 convictions and sentences by a jury in the Eighth Judicial District Court, Winn Parish, Louisiana (8th JDC) on one count of possession of a firearm by a convicted felon and one count of attempted manslaughter. Taylor received the maximum sentences on both counts, imposed consecutively, for a total of 35 years at hard labor. In the petition, Taylor raises a single ground for habeas relief. That is, a Brady[1] violation.

Taylor previously filed a petition for writ of habeas corpus

---

[1] In Brady v. Maryland, 373 U.S. 83, 87 (1963), the Supreme Court held that the suppression of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution.

in this court on December 3, 2008 (W.D.La. Docket No. 1:08-cv-01913) pursuant to 28 U.S.C. §2254. In that petition, he attacked his 2004 convictions and sentences and raised four grounds for habeas relief: (1) prejudice to petitioner's claims for erroneous jury instruction concerning reasonable doubt; (2) erroneous admission of evidence of other crimes; (3) erroneous admission of an allegedly coerced witness statement; (4) ineffective assistance of counsel; and (5) violation of Brady.

On July 1, 2009, the district court issued a ruling and judgment denying the petition and dismissing it with prejudice for failure to exhaust. Taylor filed an appeal with the Fifth Circuit Court of Appeals which granted his motion to supplement the record with a copy of his post-conviction application filed in the 8th JDC in July 2005 and granted a certificate of appealability as the record was incomplete. Accordingly, the judgment was vacated and the case was remanded for further proceedings.

On June 28, 2011, the district judge issued a judgment and ruling denying four of the five grounds with prejudice for failure to exhaust. The fifth ground, the Brady violation was denied without prejudice as it was not subject to analysis under the instruction of the Supreme Court in Rose v. Lundy, 445 U.S. 509 (1982).[2]

---

[2] The Supreme Court held "a district court must dismiss habeas petitions containing both exhausted and unexhausted claims." Rose, 455 U.S. at 522.

2

Rule 8 Resolution

This court is able to resolve the merits of this habeas corpus petition without the necessity of an evidentiary hearing because there is no genuine issue of material fact that is relevant to the petitioner's claims and the State court records provide the required and adequate factual basis necessary to the resolution of the habeas corpus petition. Moya v. Estelle, 696 F.2d 329, 332-33 (5th Cir. 1983); Easter v. Estelle, 609 F.2d 756, 761 (5th Cir. 1980); Habeas Corpus Rule 8(a).

Standard of Review

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall be considered only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. §2254(a).

Under 28 U.S.C. §2254 and AEDPA, which is applicable to habeas petitions filed after its effective date on April 24, 1996, habeas relief is not available to a state prisoner with respect to a claim that was adjudicated on the merits in the State court proceeding unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the

3

evidence presented in the State Court proceeding. Therefore, pure questions of law and mixed questions of law and fact are reviewed under Section 2254(d)(1) and question of fact are reviewed under Section 2245(d)(2). Martin v. Cain, 246 F.3d 471, 475-76 (5th Cir. 2001), cert. den. 534 U.S. 885 (2001), and cases cited therein.

A state court decision is "contrary to" clearly established Supreme Court precedent if the state court applies a rule that contradicts the governing law set forth in Supreme Court cases or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. A state court decision falls within the "unreasonable application" clause when it unreasonably applies Supreme Court precedent to the facts. Martin, 246 F.3d at 476, and cases cited therein.

A federal habeas court making the unreasonable application inquiry should ask whether the state court's application of clearly established federal law was objectively reasonable. A federal court cannot grant habeas relief simply by concluding the state court decision applied clearly established federal law erroneously. The court must conclude that such application was also unreasonable. Id.

When a state court determines that a constitutional violation is harmless, a federal court may not award habeas relief under Section 2254 unless the harmless determination itself was

4

unreasonable. Mitchell v. Esparanza, 540 U.S. 12 (2003). Moreover, in Section 2254 proceedings, a federal court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the "substantial and injurious effect" standard set forth in Brecht v. Abrahamson, 507 U.S. 619 (2007). The Court should treat the error as if it affected the verdict and the State bears the burden of persuasion as to the harmlessness of the error. Fry, 2007 WL 1661463 at *6.

### Facts

The facts of this case were set forth by the Louisiana Second Circuit Court of Appeal in State v. Taylor, 04-39443 (La.App. 2d Cir. 2005) as follows:

> On the morning of March 29, 2003, the defendant, Freddie Taylor ("Taylor"), entered a fast food restaurant in Winnfield where his former girlfriend, Umike Coleman ("Coleman"), worked. He went back into the kitchen and asked another employee where Coleman was. Seeing her behind some kitchen equipment, he walked around the employee and towards Coleman. Upon seeing Taylor, Coleman shouted that "he has a gun," whereupon the other employees and customers fled the restaurant. The restaurant's videotape surveillance system depicted Taylor entering and leaving the restaurant, but not the activity in the kitchen because no camera was placed there. Coleman testified that Taylor came in the kitchen looking for her. After she shouted that Taylor had a gun and the other three workers fled, he stood in front in front of her and pointed the gun at her, saying "B____, didn't I tell you I was going to get you?" and "B____, you take it for a joke, I will kill your ass." However, when Taylor tried to fire the weapon, it jammed. While Taylor attempted to slide the mechanism back to fire the weapon again, Coleman ran out of the kitchen and into the ladies' bathroom and then hid, locking herself in a stall. Taylor ran after her into the restroom and tried to open the stall door. When he could not, Coleman

testified that Taylor suddenly left the bathroom.

Coleman described the gun as medium sized and black, "one of them kinds you would have to jam back or something," and identified it as similar to a photograph of a Glock pistol introduced at trial. Coleman also testified that she formerly had a relationship with Taylor, but obtained two restraining orders after he became physically abusive.

Coleman's new boyfriend was Anthony McHenry. Taylor was a friend of Anthony's sister, Amy. Amy McHenry testified that Taylor was staying with her and that earlier the same morning of the incident, Taylor had tried to enter her house through a locked door. Taylor and Amy McHenry talked through the door, and Taylor told her he was going to hurt Amy's brother and Coleman. Amy McHenry testified that Taylor fired a gun on her porch. Taylor left Amy McHenry's house without gaining entry. Amy testified that later that morning, she found a shell from the gunshot. She testified that Taylor was the only person on the porch and the only one who could have fired the shot. After Taylor left, she went to the apartment where her brother and Coleman were staying to tell them about Taylor's threats. Amy McHenry and Coleman both testified that they called the police to report Taylor's conduct and threats.

Terry Lee Jackson testified that he gave Taylor a ride on the day of the incident, first to Coleman's house, and then to Burger King. He also testified that Taylor had something in his pocket. After dropping the defendant off at Burger King, he saw people running out of the restaurant and left the scene because he was scared. He went to a friend's house and then to the police station to furnish a statement. Although Jackson's statement suggested that Taylor had a gun in his pocket, he equivocated at trial when questioned concerning whether or not he actually saw Taylor with a gun, stating that it could have been a black comb.

Officer Adam Cockerham of the Winnfield Police Department testified that the day the incident occurred, he had just finished working and responded to Burger King for back-up after hearing the radio dispatch. When Cockerham saw Taylor running through the lot across from Burger King, he turned down another street, hoping to cut him off. By the time Cockerham stopped his vehicle,

another officer, Kevin Miles, had already apprehended Taylor. Officer Miles testified that Taylor told him "I am not going to give you any problems. I threw the gun in the weeds." Cockerham testified that he did not overhear this statement, but he and others searched the overgrown area where Taylor said he dropped the weapon for 40 minutes, looking for the gun. Later, he returned to the area with a metal detector but the weapon was never found. He testified that the growth of weeds was waist high.

## Discussion

Taylor contends that the prosecution failed to provide the video surveillance from Burger King which contained exculpatory evidence thereby violating Brady. Specifically, he contends the video evidence proves he was not in possession of a gun.

In order to establish a Brady violation, Taylor must show that the prosecution did not disclose evidence, the evidence was favorable to the defense and the evidence was material. A review of the record reveals a hearing was held on April 2, 2004 regarding Taylor's motion to quash the indictment. This hearing was held approximately a month before trial. The record reveals both Taylor and his attorney were present at the hearing and Taylor's attorney was aware of the existence of the video evidence at least one month prior to the hearing. (Hence the filing of the motion to quash).

The transcript of the hearing reveals Officer David Foshee ("Officer Foshee") testified that he reviewed the original videotape surveillance at the Burger King and it showed Taylor entered the restaurant, approached the counter and entered the kitchen. Officer Foshee obtained a copy of the video surveillance

7

from Burger King personnel a day or so later but he did not review the copy at that time. Instead, he passed it along to Assistant District Attorney James E. Lewis who viewed it, realized it did not contain any images of Taylor and advised Officer Foshee of the same. Officer Foshee then viewed the copy and confirmed that the images he saw of Taylor were missing. Officer Foshee testified he never possessed the original video, was no longer in possession of the copy, did not know what happened to the copy and did not attempt to obtain another copy upon learning it was incomplete. No further inquiry regarding the loss of the video evidence was made. (Doc. 13-1, p.5-7, 10).

Based on the forgoing, it is evident that, despite Taylor's contentions to the contrary, the prosecution did in fact disclose the existence of the video surveillance prior to trial. Taylor and his attorney were also aware that: (1) the copy of the original did not contain footage of him; (2) there was no attempt to obtain the original footage; and, (3) the whereabouts of the copy were unknown. Thus, the issue is not one of failure to disclose under Brady[3] but rather a failure to preserve as discussed in Arizona v.

---

[3] Even if Taylor could show the evidence was withheld, he would not be able to prove the evidence was either exculpatory or material. The cumulative testimony at trial was that Coleman was the only person to see Taylor with a gun. Had the original video been available, it would not have served to impeach Coleman's statement that Taylor possessed a gun as there was no camera in the kitchen or the bathroom. Further, the images of Taylor would have only been cumulative of the other witnesses' testimony who stated they did not see a gun. Thus, there was not and is not a

Youngblood, 488 U.S. 51 (1988). See also, Illinois v. Fisher, 540 U.S. 544, (2004)(per curiam) ("[T]he failure to preserve this 'potentially useful evidence' does not violate due process '*unless a criminal defendant can show bad faith on the part of the police*'" (quoting Youngblood, 488 U.S. at 58)).

In Youngblood, the Supreme Court addressed the need for a different analysis to evaluate whether Due Process rights are violated when evidence was not preserved. The Court explained that when such an issue presents itself, one must determine whether the State acted in good or bad faith with respect to failure to preserve evidence.[4] This finding was based in part on observations made in two prior Supreme Court cases: California v. Trombetta, 467 U.S. 479 (1984) and Lisenba v. California, 314 U.S. 219, 236 (1941). "Whenever potentially exculpatory evidence is permanently lost, courts face the treacherous task of divining the import of materials whose contents are unknown and, very often, disputed." Trombetta, 467 U.S. at 486. Additionally, the Court was unwilling "to read the fundamental fairness requirement of the Due Process Clause as imposing on police an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable

---

reasonable probability that the production of the video surveillance would have produced a different verdict.

[4] Under Brady, good or bad faith is irrelevant to the analysis of whether a due process violation occurred due to the suppression of evidence. 373 U.S. at 87.

evidentiary significance in a particular prosecution." Youngblood, 488 U.S. at 58 (citing Lisenba, 314 U.S. at 236).

This case, like Youngblood, involves the failure to preserve evidence; accordingly, Taylor must show the prosecution acted in bad faith in order to prevail. A thorough review of the pleadings, exhibits and record reveals only bald assertions of bad faith. For example, Taylor claims he was prejudiced by "the withholding of critical evidence in bad faith on the part of the prosecutor" (Doc 14, p.5). Furthermore, neither assertions of bad faith nor facts supporting such a finding were set forth or revealed at the hearing on the motion to suppress or during trial. Accordingly, as Taylor is without facts to prove the State acted in bad faith, he cannot establish a due process violation and his petition for habeas corpus should be denied.

## Conclusion

**IT IS HEREBY RECOMMENDED** that Taylor's petition for habeas corpus (Doc. 1) be **DENIED**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Pursuant to Rule 11(a) of the Rules Governing Section 2255 proceedings for the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** *See* 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

THUS DONE AND SIGNED this 18th day of January, 2013.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE